# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 211 | **DATE** | July 2, 2002 |
| **CASE TITLE** | *United States v. Anayasin Patricia Cornejo Perez* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, the Court DENIES Defendant Perez's : (I) Motion to Dismiss Indictment Pursuant to 18 U.S.C. § 3161; (II) Motion to Reconsider (III) Motion to Dismiss Count One; (IV) Motion to Dismiss Counts Two Through Eight; and (V) Motion for Bill of Particulars and for Additional Discovery. As for Perez's Motion to Require Notice of Intention to Use Other Crimes, Wrongs, or Acts in Evidence, the Court GRANTS Perez's motion for notice of the Government's intention to use Rule 404(b) material and DENIES the motion for the production of Rule 608(b) material. It is so Ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | *[docketing deputy initials]* | 52 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 JUL -2 PM 1: 25 | docketing deputy initials | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office  FILED-ED-10 | date mailed notice  mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Hon. Blanche M. Manning** |
| **v.** | ) | |
| | ) | **00 CR 211** |
| **ANAYASIN PATRICIA CORNEJO** | ) | |
| **PEREZ** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DOCKETED**

JUL 3 2002

### MEMORANDUM AND ORDER

On November 1, 2001, a grand jury returned a nine count Indictment against Defendant Anayasin Patricia Cornejo Perez ("Perez") alleging that she: (1) concealed the fact that she caused false documents to be submitted to the Immigration and Nationalization Service ("INS"), in violation of 18 U.S.C. §§ 2, 1001(a)(1) (Count 1); and (2) caused immigration documents containing false statements to be filed with the INS, in violation of 18 U.S.C. §§ 2, 1546(a) (Counts 2-9). The present matter comes before the Court on Perez's various pretrial motions.

### BACKGROUND[1]

The Government initially filed an Indictment against Perez on March 22, 2000. The Indictment alleged Perez engaged in the business of providing immigration services to Mexican citizens living in the United States. Perez filled out and completed INS forms for the immigrants, including documents to obtain U.S. resident status and work permits. Beginning in 1991 to at least April of 1997, Perez allegedly prepared INS applications with false material

---

[1] The Background facts are taken from the Indictment and the parties' submissions.

_5⁊_

information and submitted false official documents, including birth and marriage certificates and school, medical, and employment records, to the INS. Perez also allegedly offered to find women who were U.S. citizens to pose as spouses for the immigrants for the purpose of misleading the INS. Furthermore, Perez allegedly coached immigrants on how to make false statements when interviewed by INS examiners.

On March 30, 2000, Perez was arraigned before Judge Guzman and released on a $4,500 bond. On May 5, 2000, Perez filed a motion to dismiss count one of the indictment, a motion for a bill of particulars and for additional discovery, and a motion to require notice of intention to use other crimes, wrongs, or acts in evidence. A minute order by Judge Guzman dated May 12, 2000, ordered the Government to respond to the pretrial motions by June 12, 2000. On June 21, 2000, Judge Guzman recused himself from the case.

The case was reassigned to this Court on June 22, 2000. On that date, the Government had not yet filed a response to Perez's pretrial motions. The parties appeared before this Court on July 14, 2000, for a status hearing. The Government was ordered to respond to Perez's pretrial motions by August 18, 2000. At a second status hearing, on September 8, 2000, this Court granted the Government's request for an additional 30 days to respond to Perez's pretrial motions and ordered the Government to respond by October 6, 2000.

On January 26, 2001, the Government filed a consolidated response to Perez's pretrial motions. In response to the Government's delay in responding to her pretrial motions, on May 10, 2001, Perez filed a motion to dismiss the indictment under the Speedy Trial Act. The Government responded to this motion on June 1, 2001, conceding that dismissal was required,

but requested that the Court dismiss the Indictment without prejudice. On July 5, 2001, this Court granted the motion and dismissed the Indictment without prejudice.

The Government subsequently filed a new Indictment on November 1, 2001, which is identical to the initial nine-count Indictment. Trial is currently set for the second Indictment on July 22, 2002. Perez subsequently filed the following motions, which are presently before the Court: (I) Motion to Dismiss Indictment Pursuant to 18 U.S.C. § 3161; (II) Motion to Reconsider (III) Motion to Dismiss Count One; (IV) Motion to Dismiss Counts Two Through Eight; (V) Motion for Bill of Particulars and for Additional Discovery; and (VI) Motion to Require Notice of Intention to Use Other Crimes, Wrongs, or Acts in Evidence. The Court will address each of these motions in turn.

## ANALYSIS

### I.    Motion to Dismiss the Indictment Pursuant to 18 U.S.C. § 3161

The Speedy Trial Act ("the Act") (18 U.S.C. § 3161) implements the Sixth Amendment's right to a speedy trial by establishing time limits for criminal proceedings. United States v. Janik, 723 F.2d 537, 542 (7th Cir. 1983). Under the Act, the Government must file an indictment or information within thirty days of an arrest. 18 U.S.C. § 3161(b). If a defendant is to be tried upon an indictment, the trial must commence within seventy days from the date the indictment is filed. 18 U.S.C. § 3161(d)(2). Certain delays are excusable under the statute and will not be applied to the statutorily mandated time limit. 18 U.S.C. § 3161(h). Among other things, any delays resulting from the filing of pretrial motions are excusable. 18 U.S.C. § 3161(h)(1)(F).

Perez contends that dismissal is warranted because the second Indictment was returned 125 days after the original indictment was dismissed without prejudice, which exceeds the seventy-day time limit under section 3161(d)(2). In response, the Government contends that dismissal is not proper because section 3161(d)(2)'s 70-day time limit was reset when the Government filed the second Indictment.

The Seventh Circuit has not specifically addressed whether the return of a new indictment, when the initial indictment was dismissed without prejudice on the defendant's motion, triggers a new seventy-day time period or whether the statutory period is merely suspended until the new indictment is returned. In United States v. Feldman, 761 F.2d 380, 388 (7th Cir. 1985), however, although not specifically addressing the issue, the Seventh Circuit noted that unlike section 3161(h)(6), where the clock is tolled after the indictment is dismissed on the Government's motion, under section 3161(d)(1), if the indictment was dismissed on the defendant's motion, the time period begins anew with the new indictment. The court reiterated this position in United States v. Menzer, 29 F.3d 1223, 1227 (7th Cir. 1994), and cited United States v. Magana-Olvera, 917 F.2d 401, 404-05 (9th Cir. 1990), in noting that the Ninth Circuit had articulated "perhaps the clearest statement regarding the calculation of time under § 3161."

In Menzer, 917 F.2d at 402-04, the district court dismissed the initial indictment without prejudice on the defendant's motion to dismiss for failure to bring him to trial within the Act's 70-day period. The government subsequently brought a second indictment which the defendant moved to dismiss under the Act. Id. at 404. Affirming the trial court's denial of the defendant's second motion to dismiss, the Ninth Circuit held that "[s]ection 3161(d) provides that when an indictment is dismissed on the *defendant's* motion, the subsequent return of a new indictment

triggers a new 70-day time period." Id. (emphasis in original). See also "Application of Speedy Trial Statute to Dismissal or Other Termination of Prior Indictment or Information and Bringing New Indictment or Information," 39 A.L.R.4th 899, § 13 (1985) (citing cases for proposition that where the initial indictment is dismissed on a motion by the defendant, the Act's time limitation provision beging to "run anew" when a new indictment or information is filed).

Here, on July 5, 2001, this Court dismissed the initial Indictment without prejudice on Perez's Motion to Dismiss the Indictment Pursuant to 18 U.S.C. § 3161. Based on the above authorities, the fact that the Government filed a subsequent superceding indictment 125 days after the dismissal of the initial indictment is irrelevant under section 3161(d) because the 70-day clock "began anew" when the Government filed the subsequent indictment. Consequently, this Court finds that the second Indictment does not violate the Act's 70-day requirement, and therefore, DENIES Perez's Motion to Dismiss Pursuant to 18 U.S.C. § 3161.

## II.    Motion to Reconsider Dismissal of First Indictment Without Prejudice

Perez alternatively requests that the Court reconsider its June 29, 2001 Order dismissing the first Indictment without prejudice. Federal Rule of Civil Procedure 59(e) requires that all motions to reconsider must be filed no later than 10 days after entry of the judgment. Motions filed after 10 days are treated as motions under Rule 60(b). United States v. Deutsch, 981 F.2d 299, 300 (7th Cir. 1992). Under Rule 60(b), a party may request the court to

> relieve [the party] from a final judgment , order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence
> which by due diligence could not have been discovered in time to move for a new trial
> under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic),
> misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5)
> the judgment has been satisfied, released, or discharged, or a prior judgment upon which
> it is based has been reversed or otherwise vacated, or it is no longer equitable that the

judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Here, Perez's request for reconsideration of this Court's July 5, 2001 Order was incorporated with the motion to dismiss which was filed on January 10, 2002. Therefore, because Perez has not met Rule 59's stringent time requirement of 10 days after the order was entered, this Court will treat this request as a Rule 60 motion. However, because the Court did not issue a written opinion in dismissing the first Indictment without prejudice, the Court will discuss the reasoning behind the July 5, 2001 decision herein.

The Act requires dismissal of any charge or indictment that violates the established time limits. 18 U.S.C. § 3162. A case can be dismissed with or without prejudice, with the latter allowing for reprosecution. 18 U.S.C. § 3162(a)(2). Courts must consider the following three factors in determining whether to dismiss an Indictment with or without prejudice: (A) the seriousness of the offense; (B) the facts and circumstances of the case which led to the dismissal; and (C) the impact of reprosecution on the administration of the Act and on the administration of justice. Id. Whether to dismiss a case with or without prejudice is a question left to the discretion of the district court. U.S. v. Taylor, 487 U.S. 326, 335 (1988). The court's discretion is not unlimited; it is guided by the factors established by the Speedy Trial Act. Id. Therefore, the court must balance the considerations set out in the Act in light of the particular facts of the case and determine the appropriate remedy. Id. at 336-37. With these guidelines in mind, the Court will address each of the above three factors as they relate to the dismissal of the initial Indictment.

## A.    Seriousness of the Crime

In evaluating whether a case should be dismissed with prejudice, the court should consider the seriousness of the crime for which the defendant has been charged. 18 U.S.C. § 3162(a)(2).  There are some crimes, such as narcotics offenses, that courts generally consider "serious" for purposes of the Act.  See U.S. v. Regilio, 669 F.2d 1169, 1173 (7th Cir. 1981); Suzanne Isaacson, Speedy Trial Act of 1974 -- Dismissal Sanction for Noncompliance with the Act: Defining the Range of District Courts' Discretion to Dismiss Cases with Prejudice, 79 J. Crim. L. & Criminology 997, 1018 (Fall 1988).  In addition to safeguarding Sixth Amendment rights, the Act serves to protect society by reducing the recidivism rate of defendants on pretrial release.  See Martha L. Wood, Determination of Dismissal Sanctions Under the Speedy Trial Act of 1974, 56 Fordham L. Rev. 509, 514 (1987).  Therefore, courts may find a particular crime serious where, due to its social implications, there is a strong public interest in its prosecution. See Regilio, 669 F.2d at 1173.

The court's analysis should weigh the seriousness of the crime against the seriousness of the speedy trial violation.  See U.S. v. Carreon, 626 F.2d 528, 532 (7th Cir. 1980). The length of the delay measures the relative seriousness of a violation.  Taylor, 487 U.S. at 340.  Whereas a 50-day delay warrants dismissal with prejudice of a non-serious crime such as mail theft, a 90-day delay is not substantial enough to justify dismissing a narcotics indictment with prejudice. See U.S. v. Arango, 879 F.2d 1501, 1508 (7th Cir. 1989); U.S. v. Caparella, 716 F.2d 976, 976 (2nd Cir. 1983).

Here, Perez allegedly participated in a six-year scheme assisting and concealing the fact that illegal aliens had filed false and fraudulent documents with the INS to obtain permanent U.S. resident status and work authorization to which they were not entitled.

Although the Seventh Circuit has not addressed the seriousness of Perez's crime in the context of the Act, in <u>U.S. v. Hawthorne</u>, 705 F.2d 258, 260 (7th Cir. 1983), the court held that an offense punishable by five years incarceration, unlawful possession of a stolen U.S. Treasury check, constituted a serious crime under the Act. Relying on <u>Hawthorn</u>, in <u>United States v. Salgado-Hernandez</u>, 790 F.2d 1265, 1267-67 (5th Cir. 1986), the Fifth Circuit held that transportation of illegal aliens was a serious crime under the Act because the United States Parole Commission graded the offense "as one of moderate severity, a Category Three offense on an eight-category scale."

Here, Perez is charged with violating 18 U.S.C. §§ 1001, 1546, which provide for periods of incarceration of up to 5 and 25 years respectively. Consequently, this Court finds that the offense Perez is charged with here is at least as grave as the above crimes, and therefore, should be considered a serious crime under the Act.

Weighed against the seriousness of the crime, the violation of the Act in this case is not serious enough to justify dismissal with prejudice. The Government conceded that 112 non-excusable days elapsed. (Gov. Resp. at 5-6.) However, in light of the seriousness of the crime, the delay is not significant enough to justify dismissal with prejudice. <u>See, e.g.</u>, <u>Arango</u>, 879 F.2d at 1508 (90-day delay does not justify dismissal of narcotics offense, a serious crime); <u>Carreon</u>, 626 F.2d at 534 (one-year delay does not warrant dismissal with prejudice where defendant is charged with the serious crime of conspiracy to distribute heroin and distribution of heroin);

Hawthorne, 705 F.2d at 260 (dismissal without prejudice is appropriate where delay is only 9 days and defendant was convicted of unlawful possession of stolen Government checks).

### B.    Facts and Circumstances of the Delay

When determining whether to dismiss charges with prejudice, the court must also consider the facts and circumstances the led to the delay. 18 U.S.C. § 3162(a)(2). Specifically, the Court should evaluate the role played by the Government and the defendant in causing the speedy trial violation and assess responsibility for the delay. See, e.g., Taylor, 487 U.S. at 338-40.

The Court should determine whether the Government acted in bad faith by delaying prosecution. See id. at 338-39. In the context of the Act, bad faith is characterized by a pattern of neglect or intentional delay designed to gain some tactical advantage. See, e.g., id. at 339; Hawthorne, 705 F.2d at 261. In contrast, inadvertent neglect is not as culpable as a bad faith delay. See U.S. v. Fountain, 840 F.2d 509, 512 (7th Cir. 1988); Carreon, 626 F.2d at 533.

Evaluating the defendant's contribution to the delay, a defendant who waits passively while time runs does not have as strong of a claim for dismissal with prejudice as a defendant who asserts her right to a speedy trial. See Fountain, 840 F.2d at 513. Moreover, when a defendant affirmatively delays prosecution of her case, her conduct will weigh heavily in favor of permitting reprosecution. See Taylor, 487 U.S. at 340.

Here, the facts and circumstances support dismissal without prejudice. The Government claims that the violation was the result of a good faith mistake. According to the Government, when the Assistant United States Attorney ("AUSA") handling this case took a medical leave, the Government accidentally did not assign another AUSA to replace him. Perez does not

dispute that the delay was not willful or deliberate. Although a prosecutor's claim that a case "slipped through the cracks" does not excuse neglectful behavior, unless the problem recurs, the resulting delay is considered inadvertent. See Fountain, 840 F.2d at 513. Therefore, this Court finds that the Government's role in the delay does not call for dismissal with prejudice.

### C. Impact of Reprosecution on the Administration of the Act and on the Administration of Justice

Courts must also consider the impact of reprosecution on the administration of the Act and on the administration of justice. 18 U.S.C. § 3162(a)(2). The court's analysis of this factor is guided by three factors: (1) whether the defendant was prejudiced by the delay; (2) whether the Government intentionally sought to delay the trial; and (3) whether the circumstances causing the delay are likely to recur. See Carreon, 626 F.2d at 533.

Actual prejudice to the defendant can take numerous forms and should be evaluated on a case-by-case basis. Taylor, 487 U.S. at 341, n.13. Significant considerations include the length of the delay, whether it impaired the defense, and whether the defendant was incarcerated. See Taylor, 487 U.S. at 341; Hawthorne, 705 F.2d at 260.

Here, Perez has been on pretrial release throughout the pendency of the case and has not alleged any prejudice as a result of the delay. Moreover, as discussed above, the Government did not intentionally seek to delay the trial. Lastly, in light of the facts, it is unlikely that the circumstances causing the delay will recur. The ASUA handling this case has returned from medical leave, and there is no evidence to suggest that the U.S. Attorney's office loses track of cases as a matter of course, and the neglect in this case appears to be the result of an inadvertent mistake.

Consequently, because Perez was not prejudiced by the delay, the Government did not act in bad faith, and the circumstances leading to the delay are unlikely to recur, the facts and circumstances of the delay weigh in favor of dismissal without prejudice, and therefore, Perez's motion to reconsider is DENIED.

### III.    Motion to Dismiss Count One

Perez also contends that this Court should dismiss Count One on the grounds that it is: (A) impermissibly vague and uncertain; and (B) duplicitous. The Court will address each of these contentions in turn.

### A.    Sufficiency of Count 1

Federal Rule of Criminal Procedure 7(c)(1) states that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The test to determine whether an indictment sufficiently states a criminal charge is whether the indictment sets forth the elements of the offense charged, sufficiently apprises the defendant of the charges to enable him or her to prepare for trial, and enables the defendant to plead double jeopardy to a subsequent indictment for the same offense. United States v. Garcia-Geronimo, 663 F.2d 738, 743 (7th Cir. 1981); United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978). Sufficiency should not be determined by whether the indictment could have been drafted more definite and certain. Garcia-Geronimo, 663 F.2d at 743.

Here, Count 1 of the Indictment alleges that Perez violated 18 U.S.C. §§ 2, 1001(a)(1). Section 1001(a)(1) states that: "whoever … in any matter within the jurisdiction of the executive, legislative, or judicial branch or the Government of the United States, knowingly and willfully –

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; . . . shall be fined under this title or imprisoned not more than 5 years, or both."[2]

In a case strikingly similar to the instant case, United States v. Hubbell, 177 F.3d 11, 12-13 (D.C. Cir. 1999), the District of Columbia Circuit reversed the district court's dismissal, for vagueness, of count one of a multi-count indictment. The indictment alleged that the defendant, an attorney, sought to conceal and impede a federal investigation into a savings and loan which the defendant represented. Id. at 12. Count one of the indictment alleged that the defendant violated 18 U.S.C. § 1001 by knowingly and willfully falsifying, concealing, and covering up by scheme material facts about the nature of his relationship with his client and made "materially false" statements to government investigators. Id. The defendant argued that the count should be dismissed because "given the lack of specificity in identifying the particular facts concealed, the indictment failed to fairly inform him of the charge against which he must defend." Id. at 13.

Reversing the district court, the circuit court held that section 1001(a) permits the "charging of a scheme of crimes." Id. at 13. The court found that the count was not impermissibly vague because the count, incorporating by reference the other paragraphs of the indictment, set forth the acts of falsification and concealment, the nature of the scheme by which the facts were concealed and falsified, and the facts that the defendant concealed. Id. The court further noted: "[t]hat the charging language itself did not allege specific acts of concealment is of no moment – the purpose of the incorporation is to supply those facts. Id.

Here, Perez contends that the Indictment is impermissibly vague and uncertain because it "does not state the date, time, false statement, individual immigration file, . . . which would

---

[2]      Section 2 makes it a crime to aid and abet others in unlawful conduct.

allow the Defendant to either prepare for trial or plead double jeopardy." (Mot. to Dismiss Count 1, at 4.) A review of the Indictment, however, does not support Perez's contention. Paragraph 2 of the Indictment alleges that from 1991 to April 1997 Perez did:

> knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device material facts within the jurisdiction of the [INS] in that defendant did knowingly participate in a scheme to conceal from the [INS] the fact that illegal aliens had filed false and fraudulent INS Petitions I-130 and Applications I-485 and I-817 in order to obtain permanent resident status and work authorization in the United States to which illegal aliens were not entitled.

The Indictment then goes on to allege specifically how the scheme operated. For a fee of $1,500-$2,500, Perez allegedly prepared and assisted in the preparation of INS documents which contained false information. The Indictment specifically details which INS forms Perez caused to be filed and what particular false information was included with the forms and that she filed false official supporting documents (birth and marriage certificates and school, medical, and employment records) with the forms. The indictment further alleges that Perez arranged to find women to pose as spouses for the immigrants and "coached" them on how to answer the INS examiners' questions. Furthermore, the Indictment incorporates Counts 2-9 which provide specific dates when on behalf of identified persons, Perez submitted particular forms to the INS containing false statements. For example, Count 2 alleges that:

> On or about March 29, 1995, at Chicago, in the Northern District of Illinois, Eastern Division, . . . defendant herein, knowingly presented on behalf of A.L to the INS applications required by the immigration laws and regulations prescribed thereunder, namely, INS Form I-130, titled "Petition for Alien Relative" and INS Form I-485, titled "application to Register Permanent Residence or Adjust Status," containing false statements with respect to a material fact, specifically, that an individual identified here as "Individual A," a United States citizen, was spouse of A.L. and that they were married on September 24, 1990 . . . .

Accordingly, this Court finds that Count 1 of the Indictment is not impermissibly vague because it sufficiently sets forth the elements of the offense charged, apprises Perez of the

charges to enable her to prepare for trial, and, as discussed below, enables Perez to assert her Sixth Amendment rights against double jeopardy to a subsequent indictment for the same offense.

### B.     Duplicity of the Indictment

Perez also contends that Count 1 should be dismissed because it is duplicitous in that it charges "countless acts,"and therefore, will not protect her against double jeopardy and may result in a non-unanimous jury verdict.

A count is duplicitous where it "join[s] two or more offenses in a single count." United States v. Marshall, 75 F.3d 1097, 1111 (7th Cir. 1996). See also United States v. Berardi, 675 F.2d 894, 897 (7th Cir. 1982) (duplicity exists if a count contains "more than one distinct and separate offense"). Courts generally prohibit duplicitous counts because they can result in "improper notice of the charges against [the defendant], prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense." Marshall, 75 F.3d at 1111.

A count is not duplicitous if it merely charges the "commission of a single offense by different means." Berardi, 675 F.2d at 897.   Federal Rule of Criminal Procedure 7(c) permits a count to allege that the offense was committed by "one or more specified means." Interpreting Rule 7(c), courts have held that the drafters contemplated the joining of two or more acts, each one of which would constitute a violation of the same offense standing alone, without offending the rule against duplicity. Berardi, 675 F.2d at 898. While it is often a fine line to draw, a count

is not duplicitous where it alleges multiple acts which each constitute separate violations of the same statute, if the multiple acts are part of a continuing course of conduct. Id.

In a case discussed in more detail above, Hubble, 177 F.3d at 14, the District of Columbia Circuit rejected the defendant's contention that the indictment was duplicitous because "by charging numerous false statements and acts of concealment . . . the indictment impermissibly charges multiple offenses in one count." Id. at 14. The court noted that the plain language of section 1001 permits the charging of a scheme of crimes, and therefore, the defendant's contention was not supported by the statute. Id.

Similarly, in United States v. Uco Oil Co., 546 F.2d 833, 834-35 (9th Cir. 1976), the Ninth Circuit reversed the district court's dismissal of an indictment alleging that the defendants violated section 1001 and 2 by making false statements to a government agency and concealing the false statements by "trick, scheme, or device." Looking at the language of section 1001, the legislative history, the nature of the proscribed conduct, and the appropriateness of "multiple punishment for the conduct charged in the indictment," the court held "that Congress, in enumerating several different types of fraudulent conduct in Section 1001, did not create separate and distinct offenses." Id. at 838. Consequently, the court held that "because the statute defines but a single offense, it [is] proper to charge the different means, denounced disjunctively in the statute, conjunctively in each count of the indictment." Id. Moreover, because proof of any one allegation will sustain a conviction, a judgment will not prevent the defendants from asserting double jeopardy in a subsequent proceeding. Id.

Here, Perez contends that Count 1 is duplicitous because it alleges numerous false documents were filed, and therefore incorporates multiple offenses in one count. As set forth in

the above authorities, however, section 1001 permits the charging of a scheme of crimes and that multiple acts within the scheme are considered one offense.

Moreover, as explained above, Count 1 provides sufficient detail to guard against reprosecution on the same charges. Consequently, the language of Count 1 will not prevent Perez from asserting his double jeopardy protections. See Uco Oil Co., 546 F.2d at 838; United States v. Cichon, No. 95 CR 50055, 1996 WL 328362, at *3 (N.D. Ill. June 13, 1996).

Finally, descriptive jury instructions will prevent a non-unanimous jury verdict from being returned. If an offense can be violated in a number of ways, a conviction stemming from the jury's belief that one violation was committed is sufficient to convict. See Zeidman, 540 F.2d at 317. A jury only needs to unanimously find that one of the alleged false means of preparing and aiding in the preparation of false immigration documents is substantiated, and therefore, descriptive jury instructions will inform the jury that if it finds only one violation has been committed it is sufficient to return a guilty verdict. See Cichon, 1996 WL 328362, at *3.

Consequently, the Court finds that Count 1 is not impermissibly vague or duplicitous, and therefore, DENIES Perez's Motion to Dismiss Count 1.

## IV.    Motion to Dismiss Counts 2-8

Perez further seeks to dismiss Counts 2-8 on the grounds that the statute of limitations (18 U.S.C. § 3282) has expired. Under section 3282, criminal charges must be brought within 5 years of the date of the offense. Here, the dates of the alleged offenses in counts two through eight are: March 29, 1995 (Count Two); May 26, 1995 (Count Three); June 16, 1995 (Count Four); June 23, 1995 (Count Five); July 23, 1995 (Count Six); February 9, 1996 (Count Seven);

and September 5, 1996 (Count Eight). Perez seeks dismissal because the specified dates in the November 1, 2002 superceding indictment are all outside the five-year statute of limitation.

Section 3288, however, provides for a six month window to refile an indictment if the initial indictment was dismissed after the statue had run. <u>See</u> <u>United States v. Burdix-Dana</u>, 149 F.3d 741, 742-43 (7th Cir. 1998); <u>United States v. Clawson</u>, 104 F.3d 250, 251 (9th Cir. 1996). This section states, in part, that "[w]henever an indictment ... is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned ... within six calendar months of the date of the dismissal of the indictment or information ... which new indictment shall not be barred by any statute of limitations." 18 U.S.C. § 3288.

Here, Counts 2-8 were included in the initial indictment, which was timely filed on March 22, 2000 and dismissed on July 5, 2001. Consequently, because the second indictment was returned on November 1, 2001, within the six-month grace period, the statute of limitations does not bar the second indictment, and the Court, therefore, DENIES Perez's Motion to Dismiss Counts 2-8.

## V.    Motion for a Bill of Particulars and Additional Discovery

Perez has additionally filed a Motion for Bill of Particulars (pursuant to Federal Rule of Criminal Procedure 7(f)) and for Additional Discovery.  Specifically, Perez seeks the false documents referred to in Count One, dates of Perez's participation or dates of submission of the documents to the INS, identification of those individuals whose files were presented to the INS and referred to in Count One, and information on the Government's witnesses.

Federal Rule of Criminal Procedure 7(f) authorizes the court to order the filing of a bill of particulars whenever the indictment fails sufficiently to appraise the defendant of the offense for which she is charged. Fed. R. Crim. P. 7(f). The decision on whether a bill of particulars is appropriate is within the sound discretion of the district court. United States v. Esteves, 886 F. Supp. 645, 646 (N.D. Ill. 1995).

In determining whether a bill of particulars is necessary, the court must focus on the indictment and whether it "sets forth the elements of the offense charged and sufficiently appraises the Perez of the charges to enable him to prepare for trial." United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981). See also United States v. Farley, No. 97 CR 0041, 1997 WL 695680, at *5 (N.D. Ill. Oct. 31, 1997). An indictment satisfies this standard if it sets forth the elements of each offense charged, cites the statute or statutes violated, and the time and place of the Perez's conduct that allegedly violates the statute. Kendall, 665 F.2d at 134.

The defendant only has a constitutional right to know the offenses with which he is charged, not "the details of how it will be proved." Id. at 135. As a result, the defendant is not entitled to know all of the Government's evidence but only the theory of its case. Id. The court should also consider whether the discovery provided by the Government, in addition to the allegations in the indictment, allows the defendant to prepare his case and diminishes the potential for surprise at trial. United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978). When information for a defendant's defense is available by "some other satisfactory form" a bill of particulars is not necessary. United States v. Canino, 949 F.2d 928, 935 (7th Cir. 1991) (citing Wright, Federal Practice and Procedure: Crim. 2d, § 129, pp. 436-38 (1982).

Here, as discussed in more detail above, the indictment sufficiently alleges that Perez

participated in a scheme to conceal material facts from the INS by aiding illegal immigrants in

preparing false immigration documents. Additionally, the Government has an "open-file"

discovery policy, which entitles the Perez to all evidence assembled. The "open-file" discovery

policy is a "satisfactory form" of information retrieval, thereby elevating the need for a bill of

particulars. Canino, 949 F.2d at 935. Moreover, pursuant to Federal Rule of Criminal Procedure

16 and Local Rule 2.04, the Government provided Perez with or made available: (1) the INS's

report pertaining to Perez's meeting with INS agents; (2) the false documents which Perez

submitted to the INS; (3) results of tests and examinations done on specific fraudulent

documents; (4) Gigilo materials; (5) tapes and transcripts; and (6) any exculpatory materials.

Consequently, because Perez is aware of the charges against her and has access to the

Government's evidence through the "open-file" discovery policy, the Court DENIES the Motion

for a Bill of Particulars.

Perez also seeks the production of any information concerning the immigration status of

the Government's witnesses. In essence, Perez seeks a list of the Government's witnesses.

Neither the Constitution nor Federal Rule of Criminal Procedure 16 requires that a defendant in a

noncapital case be provided with a list of all prospective government witnesses. United States v.

Braxton, 877 F.2d 556, 560 (7th Cir.1989); United States v. Napue, 834 F.2d 1311, 1317 (7th

Cir.1987). The district court, however, has the authority to order such production. United States

v. Jackson, 508 F.2d 1001, 1005-08 (7th Cir.1975). Such an order, however, requires a

particularized need for the list of prospective witnesses. United States v. Shields, 1991 WL

113164, *3 (N.D. Ill. June 5, 1991). The defendant must articulate a compelling reason other than generalized reasons. United States v. Sclamo, 578 F.2d 888, 890 (1st Cir.1978).

Here, this Court sees no need to require the Government to disclose a list of its prospective witnesses. Perez has expressed no more than generalized, abstract claims of necessity. The Court believes that such disclosure is particularly inappropriate when, as here, the Government has disclosed all Jencks Act material which will necessarily reveal the identity of the witnesses expected to be called by the government during its case-in-chief. See, e.g., United States v. Messino, 855 F. Supp. 955, 967 (N.D. Ill.1994).

Perez's motion for the pretrial production of the Government's witness list is accordingly denied. This ruling, however, does not affect the Government's obligations under Brady v. Maryland, 373 U.S. 83 (1963). Therefore, to the extent that any request for witness lists seeks the identities of persons who can provide information favorable to the accused which is material to guilt or innocence, the Government must furnish Perez with the identities of those persons under Brady. See United States v. Villarael, 752 F. Supp. 851, 852 (N.D. Ill.1991); Messino, 855 F. Supp. at 966 n. 3.

### VI. Motion to Require Notice of Intention to Use Other Crimes, Wrongs, or Acts Evidence

Perez has further filed a motion seeking notice of the government's intention to use other crimes, wrongs, or acts evidence under Federal Rules of Evidence 404(b) and 608(b).

Federal Rule of Evidence 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he likely acted in conformity therewith on a particular occasion. Fed. R. Evid. 404(b). The purported rationale for the exclusion of evidence of other crimes, wrongs, or acts is that such evidence is of slight

probative value and tends to distract the trier of fact from the facts at issue. <u>United States v.</u> <u>Smith</u>, 103 F.3d 600, 602 (7th Cir.1996). This evidence may be admissible, however, for any other relevant purpose including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." <u>Id.</u>

Federal Rule of Evidence 404(b) requires that the government in a criminal case, upon request of an accused, provide reasonable advance notice of its intention to use such evidence and the general nature thereof. The purpose of this notice requirement is to "reduce surprise and promote early resolution on the issues of admissibility." Fed. R. Evid. 404(b), Notes of Committee on the Judiciary, Sen Rep. No. 93-1277. This Rule does not, however, provide for unbridled discovery and, to that end, the government need only "appraise the defense of the general nature of the evidence of extrinsic acts." <u>Id.</u>

Here, this Court believes that, under the present circumstances, 14 days is a sufficient time for Perez to analyze and assimilate Rule 404(b) material in preparation for trial. By providing this information 14 days before trial, the Government will come within Rule 404(b)'s provision requiring "reasonable notice" in advance of trial. Fed. R. Evid. 404(b).

Perez also seeks pretrial notice of the Government's intention to use "specific instances of conduct" or Rule 608(b) material. Rule 608(b) restricts the use of specific instances of conduct of a witness for the cross examination of that witness. Fed. R. Evid. 608(b). Unlike Rule 404(b), however, Rule 608(b) does not require disclosure of any evidence which might be used for impeachment purposes.

It is well established that defendants are not entitled access to any Rule 608(b) material which is not discoverable under Federal Rule of Criminal Procedure 16. <u>See</u> <u>United States v.</u>

Hartmann, 958 F.2d 774, 789 n. 5 (7th Cir.1992); United States v. Cerro, 775 F.2d 908, 914-15 (7th Cir.1985). Rule 16 explicitly limits compelled discovery to information the government intends to introduce during its case-in-chief. Fed. R. Crim. P. 16(b)(1)(A). By definition, Rule 608(b) evidence may not be used during the government's case-in-chief, and therefore, it is not discoverable under Rules 12 or 16. See United States v. Sims, 808 F. Supp. 607, 611 (N.D. Ill.1992).

Accordingly, Perez's motion for notice of the Government's intention to use Rule 404(b) material is GRANTED, and the Government, to the extent it has not already done so, is ordered to produce all Rule 404(b) material no later than 14 days before trial. The motion for the production of Rule 608(b) material is DENIED.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Perez's : (I) Motion to Dismiss Indictment Pursuant to 18 U.S.C. § 3161; (II) Motion to Reconsider (III) Motion to Dismiss Count One; (IV) Motion to Dismiss Counts Two Through Eight; and (V) Motion for Bill of Particulars and for Additional Discovery. As for Perez's Motion to Require Notice of Intention to Use Other Crimes, Wrongs, or Acts in Evidence, the Court GRANTS Perez's motion for notice of the Government's intention to use Rule 404(b) material and DENIES the motion for the production of Rule 608(b) material. It is so Ordered.

ENTER:

*Blanche M. Manning*

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: _7-2-02_